1
2
3
4
5
6
7

8                              IN THE UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | HARRY DANIEL TESSIEN,                    | CV F 07 0460 AWI WMW

12 |                                          | **SCHEDULING CONFERENCE**
   |                 Plaintiffs,              | **ORDER**
13 |
   | vs.
14 |                                          | Initial Rule 26 Disclosure Deadline:
   | CITY OF MODESTO, et al.,                 | 9/20/2007
15 |
   |                                          | Expert Disclosure Deadline:
16 |                 Defendants.              | 7/18/08

17 |                                          | Supplemental Expert Disclosure Deadline:
   |                                          | 8/1/08
18 |
   |                                          | Discovery Deadline:
19 |                                          | 6/20/08

20 |                                          | Non-Dispositive Motion
   |                                          | Filing Deadline: 1/16/09
21 |
   |                                          | Dispositive Motion
22 |                                          | Filing Deadline: 11/14/08

23 |                                          | Settlement Conference Date:

24 |
   |                                          | Pre-Trial Conference Date:
25 |                                          | 2/27/09 8:30 a.m. Dept. 2

26 |                                          | Trial Date: 3/31/09
   |                                          | Jury Trial
27 |                                          | Est. No. Days:10

28

1

1.    Date of Scheduling Conference:

September 6, 2007


2.    Appearances of Counsel:

Paul Strange  appeared on behalf of plaintiff.

James Wilson appeared on behalf of defendants.

3.    The Pleadings:

A.    Summary of the Pleadings.  This action proceeds in the March 22, 2007,

complaint.  Defendants have filed an answer to the compalint.

B.    Orders Re: Amendment of Pleadings.

No amendments are proposed at this time.


4.    Factual Summary:

(a). Plaintiff's Statement

The Plaintiff Mr. Tessien is an adult and resident of Fresno County, a motorist possessing a California Driver's license, and a deaf person. He alleges that Defendants have unlawfully and unjustifiably used unnecessary force in the commission of their duties, injuring him in the process and causing him suffering; that they willfully and knowingly violated Title II of the ADA and Section 504 of the Rehabilitation Act, by failing to make accommodations to their policies and procedures, and discriminating against him; that they have been negligent and reckless in performing their duties, thus causing him injury and suffering; and that they have violated his civil rights, among other claims.

On March 11, 2006, at approximately 1:00 a.m., Harry Daniel Tessien was driving northbound on McHenry Avenue in the City of Modesto. Mr. Tessien noticed police lights in his rear view mirror. He pulled to the side of the road and placed his hands on the steering wheel, quietly waiting for the officer to approach the truck. Less than 60 seconds after stopping his truck, without warning, the rear window was blown inward by a shotgun blast spraying glass and debris all over Mr. Tessien. Startled and shaking, Mr. Tessien immediately threw the door open

2

1   and sprung from the truck to seek cover. Upon exiting the truck, Mr. Tessien began yelling "I am
2   deaf, I am deaf."

3   The Modesto Police Department responded by opening fire with Tasers and bean bag
4   shotguns. Mr. Tessien was not aware that the shotguns were shooting bean bags, but, rather,
5   immediately believed that the police were shooting him with real shotgun rounds. Mr. Tessien
6   looked up to see nothing but bright lights and police officers firing multiple rounds at him. Mr.
7   Tessien continued yelling, "I am deaf, I am deaf, why are you shooting me?" Mr. Tessien was
8   initially pinned between the truck door and the firing officers. He attempted to raise his hands but
9   was shot in the abdomen, and reflexively covered his mid section with his arms. The officers
10  continued to shoot him, so he ran around the front of the truck and took cover on the ground.
11  After taking cover on the ground while continually yelling "I am deaf, I am deaf," Officer Garcia
12  shot Mr. Tessien three more times until Officer Garcia had emptied his shotgun and Officer
13  Oaxaca shot Mr. Tessien at least one more time. Finally, the officers stopped shooting and
14  motioned Mr. Tessien to lie down, which he promptly did. The officers then placed Mr. Tessien
15  under arrest without further incident and put him in the back of a police car.

16  Mr. Tessien was not provided with a qualified sign language interpreter at any time, and
17  was unable to effectively communicate with Defendants or other third parties thus depriving him
18  equal treatment under the law. Mr. Tessien suffered numerous grievous and serious physical and
19  mental injuries as a result of this reckless and willful use of excessive force by the Defendants.

20  Plaintiff Mr. Tessien alleges that Defendants egregious and reckless actions failed to take
21  even the most minimal reasonable precautions required of public officials in the commission of
22  their duties to safeguard all members of the public, including those with disabilities, from harm.
23  And, in fact, that such actions surpassed mere negligence and passed into malicious and willful
24  injury to the Plaintiff's person and dignity. Thus the Plaintiff alleges that the Defendants, in their
25  various capacities, have violated numerous Federal and State laws, as outlined below.

26  Defendants City of Modesto and the Modesto Police Department are public entities within
27  the meaning of Title II of the ADA, 42 U.S.C. § 12131(1); 28 C.F.R. §35.104. These Defendants are
28  government organizations and are responsible for public safety and law enforcement within their

3

1  jurisdictions. Defendant Mr. Roy W. Wasden is Chief of the Modesto Police Department, and has

2  the responsibility to carry out the policies of the Police Department, as well as to supervise Police

3  Department Staff. Defendants Starr, Garcia, Oaxaca, Laxton, Hicks, and Findlen are Officers of the

4  Modesto Police Department, and are responsible for public safety under theSupervision of

5  Defendant Wasden and Defendant Modesto Police Department and Defendant City of Modesto.

6          Plaintiff Mr. Tessien alleges that the individual officers used excessive and unreasonable

7  force without justification, and that Defendants Modesto Police Department and City of Modesto

8  were also responsible through their development of policies and practices that failed to take even

9  the most minimal reasonable precautions necessary to prevent such excessive use of force.

10         Plaintiff also alleges that such inadequate policies and procedures were direct violations of

11  Defendants' Modesto Police Department and City of Modesto responsibilities under Title II of the

12  ADA, Section 504 of the Rehabilitation Act, and California Civil Code §§ 52.1 and 51.7 to

13  provide Plaintiff equal treatment and to not discriminate against Plaintiff, by providing reasonable

14  modifications to policies and procedures, and accommodations for effective communication.

15  Plaintiff also alleges that such actions, both individual and institutional, constituted negligent injury,

16  battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and a

17  violation of equal protection under the law. Plaintiff seeks

18  compensatory relief, damages, and attorney's fees and costs.

19         (b). Defendants' Statement

20         On March 11, 2006, at approximately 1:00 a.m., Modesto Police Department received

21  information regarding shot having been fired in a "drive-by shooting", not only from citizen

22  callers, but also from an on-duty officer who was working in the downtown area and heard the

23  sounds of gunfire. Responding officers obtained a vehicle description and direction of travel for

24  the suspect vehicle in this shooting incident, and broadcast it to all on-duty Modesto Police

25  Department officers via the police radio.

26         Defendant Officer Daniel Starr, who was driving into the area from which the escaping

27  suspect vehicle could have been expected to come, observed the pick-up truck which was being

28  driven by the plaintiff approaching from the opposite direction. The plaintiff's vehicle generally fit

4

1  the description of the suspect vehicle, and was also observed to be being driven without its

2  headlights illuminated despite the fact that it was well after dark, as is required by law. Due to the

3  vehicle's appearance, its direction of travel, and the fact that it was being driven in a "blacked out"

4  condition, the officer entertained the suspicion that this might be the suspect vehicle from the recent

5  shooting.

6          Officer Starr executed a u-turn and began to follow the plaintiff's vehicle while

7  broadcasting information about his observation and requesting additional officers to assist him in

8  making a high-risk stop on the vehicle. After additional officers joined him in trailing the vehicle,

9  Officer Starr attempted to stop the plaintiff's vehicle by illuminating the emergency lighting

10 equipment on his marked police cruiser. Rather than pull to the side of the road in response to this

11 well recognized signal from a police car to do so, the plaintiff's vehicle continued moving.  Despite

12 the continued display of the overhead emergency lighting and the use of Officer Starr's siren, the

13 vehicle failed to yield until Officer Findlen, planning to deploy a "spike strip" in order to force the

14 vehicle to stop, passed the plaintiff and his pursuers and positioned himself ahead of the slow speed

15 pursuit in order to deploy the strip.

16         Once the plaintiff's vehicle pulled to a stop, the pursuing officers set about to conduct a

17 high-risk stop, in which any occupant of the stopped vehicle is commanded to do a series of

18 things (such as shutting off the engine, tossing the ignition key out of the vehicle, and performing

19 a variety of other acts) culminating with the taking control of the person(s) of the vehicle's

20 occupant(s) one at a time, so as to detain the occupant(s) for purposes of investigating the

21 incident which prompted the stop. Voice commands were made to the plaintiff by Officer Starr,

22 who, due to the absence of any sort of placard or other notification, had neither actual nor

23 constructive knowledge that the plaintiff was hearing impaired. The plaintiff was repeatedly

24 ordered to show his hands to the officers, who could not see them in the position in which he was

25 holding them as he sat in his truck. When the plaintiff failed to respond to those commands,

26 Officer Starr attempted to repeat them in rudimentary Spanish, again with no response from the

27 plaintiff.

28         During this time, the officers had a very restricted view of the plaintiff due to the fact that

5

1    they found it necessary to maintain positions of cover while they were attempting to gain control

2    of a person whom they believed to be the armed perpetrator of the recent drive-by shooting.

3    Their only view of the interior of the plaintiff's truck was through the heavily tinted and

4    rain-spattered rear window of the truck's cab. As the plaintiff continued to fail to respond to the

5    commands which were being given in an effort to gain control of him, he was seen to be moving

6    about within the truck's cab, and leaning toward the passenger side of the cab. The officers could

7    not, however, see what he was doing as he did that.

8            In hope of improving the opportunity to see what was being done in the truck's cab by the

9    plaintiff, Officer Oaxaca discharged one round from a non-lethal "beanbag gun" in order to

10   attempt to knock the glass from the rear window of the truck cab. Immediately after that round

11   was fired, the plaintiff opened the driver's door of his truck, but did not emerge from the cab.

12           Officer Garcia moved laterally in an effort to gain a better view of the plaintiff through the

13   open driver's door, but was still unable to see his hands. In order to try to gain the plaintiff's

14   surrender and compliance with the officers' commands, Officer Garcia fired at him with his

15   "beanbag gun."

16           The plaintiff finally emerged from the truck's cab after several beanbag rounds had been

17   discharged at him by Officers Oaxaca and Garcia. However, rather than surrender when he

18   emerged from the truck, the plaintiff turned toward the officers who were positioned by police

19   cars behind him in a posture which the officers interpreted as being aggressive, while moving his

20   hands about near his upper body and yelling at them. After several more beanbag rounds were

21   fired at him, the plaintiff moved to the front of his vehicle in order to take cover behind the front

22   end of the truck. Before the plaintiff moved toward the front of his truck, Officer Hicks

23   attempted to subdue him by discharging a Taser device at him. That effort failed because the

24   distance between the plaintiff and the officer's position behind cover was outside the maximum

25   range of the Taser device.

26           At this point, an officer who had moved forward along the passenger side of the truck in

27   an effort to gain a position of advantage on the plaintiff as he hunkered down using the truck for

28   cover, heard the plaintiff saying something about being deaf. He immediately communicated that

to the other officers on scene, and the plaintiff was approached and taken into custody without any further application of force. Officer Laxton, whose father is profoundly deaf, and who is fluent in American Sign Language, attempted to communicate with the plaintiff, who claimed not to understand American Sign Language.

The investigation which ensued after the plaintiff was detained revealed that he was unarmed, and thus probably not the suspect from the drive-by shooting, but also that he appeared to be intoxicated, as well as hearing impaired. Officers in the field, and during the follow-up D.U.I. procedures after the plaintiff's arrest, communicated successfully with him via written word and the plaintiff's apparent ability to lip read.

The plaintiff's blood-alcohol content, when tested more than an hour after he stopped driving his truck, was found to be 0.11% by volume. The plaintiff was subsequently charged with and convicted of driving under the influence of alcohol in state court.

The principal factual issues which the parties dispute:

(a) Whether, and the extent to which, the events described in the Plaintiff's complaint on the night of March 11, 2006 are an accurate and complete representation of the events of that evening.

(b) Whether, and the extent to which, the policies and procedures of the Defendants as described by the Plaintiff in his complaint, are an accurate and complete representation of the extant policies and procedures of the Defendants.

5.      Legal Issues:

The principal legal issues:

(a) Undisputed issues:

Jurisdiction and Venue are undisputed by the parties.

(b) Disputed Issues:

1. Whether, or to what extent, the Defendants have violated Section 1983, ADA Title II, Section 504 of the Rehabilitation Act, California Civil Code §§ 52.1. and 51.7, and the Fourteenth Amendment of the United States Constitution.

2. Whether, or to what extent, the Defendants have committed any acts, either willful or

7

1   negligent, which was the proximate cause of injury to the Plaintiff.

2       3. Whether, or to what extent, the Defendants are liable for any injuries to the Plaintiff.

3       4. Whether, or to what extent, the Defendants have any legal defenses to actions alleged by

4   the Plaintiff.

5       5. Whether, or to what extent, the Plaintiff was the cause of any such injuries to himself, due

6   to negligence or failure to mitigate.

7       6. Whether, or to what extent, the relief sought from Defendants City of Modesto and

8   Modesto Police Department is barred by California Government Code Section 818.

9       6.      Consent to Magistrate Judge Jurisdiction:

10              The parties have neither consented nor declined Magistrate Judge jurisdiction.

11      7.      Discovery Plan and Cut-Off Dates:

12              A.      Pursuant to F.R.Civ.P.26(b), and except as the court may order after a

13   showing of good cause, the "(p)arties may obtain discovery regarding any matter, not privileged,

14   that is relevant to the claim or defense of any other party."

15              B.      Unless otherwise stipulated between the parties or ordered by the court

16   pursuant to F.R.Civ.P.26(b)(2), discovery shall be limited as follows:

17                      (1)      Depositions:

18                               a.      Each side may take no more than ten (10) depositions.

19                               b.      A deposition shall be limited to one (1) day of seven (7) hours.

20   F.R.Civ.P.30(d).

21                      (2)      Interrogatories:

22                               a.      "(A)ny party may serve upon any other party written

23   interrogatories, not exceeding 25 in number including all discrete subparts . . ." F.R.Civ.P.33(a).

24              C.      Pursuant to F.R.Civ.P.26(e), the parties shall supplement their disclosures and

25   amend their responses to discovery requests in a timely manner.

26              D.      The parties are ordered to complete all discovery pertaining to non-experts on

27   or before June 20, 2008, and all discovery pertaining to experts on or before June 20, 2008.

28              E.      The parties are directed to disclose all expert witnesses, in writing, on or

8

1   before July 18, 2008, and all supplemental expert witnesses, in writing, on or before August 1, 2008.

2   The written designation of experts shall **be made pursuant to F.R.Civ.P. Rule 26(a)(2), (A) and**

3   **(B), and shall include all information required thereunder.**  Failure to designate experts in

4   compliance with this Order may result in the court excluding the testimony or other evidence offered

5   through such experts that are not disclosed pursuant to this Order.

6               The provisions of Fed.R.Civ.P. 26(b)(4) shall apply to all discovery relating to

7   experts and their opinions.  Experts must be fully prepared to be examined on all subjects and

8   opinions included in the designation.  Failure to comply will result in the imposition of sanctions,

9   which may include striking the expert designation and preclusion of expert testimony.

10          8.      Pre-Trial Motion Schedule:

11              All Non-Dispositive Pre-Trial Motions, including any discovery motions, shall be

12   filed on or before January 16, 2009, and are heard on the second and fourth Thursdays  at 1:30 p.m.

13   in Courtroom No. 8 on the Sixth before the Honorable William M. Wunderlich, United States

14   Magistrate Judge.  **Counsel must comply with Local Rule 37-251 with respect to discovery**

15   **disputes or the motion will be denied without prejudice and dropped from calendar.**

16   **Additionally, Local Rule 5-133(f) requires courtesy copies in excess of 25 and/or 50 pages be**

17   **provided to the court**.

18              In scheduling such motions, the Magistrate Judge may grant applications for an order

19   shortening time pursuant to Local 6-144(e).  However, if counsel does not obtain an order shortening

20   time, the notice of motion *must* comply with Local Rule 37-251.

21              Counsel may appear, and argue non-dispositive motions, telephonically, provided a written

22   request to so appear is presented to Magistrate Judge Snyder's Courtroom Deputy Harriet Herman

23   no later than five (5) court days prior to the noticed hearing date.  If two or more attorneys request to

24   appear telephonically, then it shall be the obligation and responsibility of the moving party(ies) to

25   make prior arrangements for the conference call with an AT&T operator, IF counsel do not have

26   conference call capabilities on their telephone systems, and to initiate the call to the court.

27              All Dispositive Pre-Trial Motions shall be filed on or before November 14, 2008, and

28   are heard on Mondays at 1:30 p.m. in Courtroom No. 2 on the Eighth Floor before the Honorable

1  Anthony W. Ishii, United States District Judge.  In scheduling such motions, counsel shall comply

2  with **Local Rule 78-230**.

3          9.      Pre-Trial Conference Date:

4                  February 27, 2009 at 2:00 p.m. in Courtroom No. 2 on the Eighth Floor before the

5  Honorable Anthony W. Ishii, United States District Judge.

6                  Ten (10) days prior to the Pretrial Conference, the parties shall exchange the

7  disclosures required pursuant to F.R.Civ.P. 26(a)(3).

8                  The parties are ordered to file a **JOINT Pretrial Statement pursuant to Local Rule**

9  **16-281(a)(2).**  The parties are further ordered to submit a digital copy of their Joint Pretrial

10 Statement in WordPerfect 11[1] format to Judge Ishii's chambers by e-mail to

11 AWIOrders@caed.uscourts.gov.

12         Counsels' attention is directed to **Rules 16-281 and 16-282 of the Local Rules** of Practice

13 for the Eastern District of California as to the obligations of counsel in preparing for the Pre-Trial

14 Conference.  **The Court will insist upon strict compliance with those Rules**.

15         10.     Trial Date:

16                 March 31, 2009, at 9:00 a.m. in Courtroom No. 2 on the Eighth Floor before the

17 Honorable Anthony W. Ishii, United States District Judge.

18                 A.      This is a Jury  trial.

19                 B.      Counsels' Estimate of Trial Time: 5-10 days.

20                 C.  Counsels' attention is directed to **Rule 16-285 of the Local Rules** of Practice for

21 the Eastern District of California.

22         11.     Settlement Conference:

23         Should the parties desire a Settlement Conference, they will jointly request one of the Court,

24 and one will be arranged.  In making such a request, the parties are directed to notify the Court as to

25 whether or not they desire the undersigned to conduct the Settlement Conference or to arrange for

26 _____

27         [1] If WordPerfect 11 is not available to the parties, then the latest version of WordPerfect, or
   any other word processing program in general use for IBM compatible personal computers, is
28 acceptable.

1   one before another judicial officer.

2        12.     Request for Bifurcation, Appointment of Special Master, or other Techniques to

3   Shorten Trial: No suggestions for shortening of the trial are made by either party.  The defendants

4   request that the issues regarding any Monell claims be bifurcated and tried separately from the direct

5   claims against the individually named police officer defendants.  The plaintiff opposes bifurcation.

6        13.     Related Matters Pending: This matter is not related to any case currently pending in

7    this or any other court, including bankruptcy court.

8        14.     Compliance with Federal Procedure:

9            The Court requires compliance with the Federal Rules of Civil Procedure and the

10   Local Rules of Practice for the Eastern District of California.  To aid the Court in the efficient

11   administration of this case, all counsel are expected to familiarize themselves with the Federal Rules

12   of Civil Procedure and the Local Rules of Practice for the Eastern District of California, and to keep

13   abreast of any amendments thereto.  The Court must insist upon compliance with these Rules if it is

14   to efficiently handle its increasing caseload.  Sanctions will be imposed for failure to follow the

15   Rules as provided in both the Fed.R.Civ.P. and the Local Rules.

16       15.     Compliance with Electronic Filing Requirement:

17           On January 3, 2005, the United States District Court for the Eastern District of California

18   became an electronic case management/filing district (CM/ECF).  Unless excused by the Court, or

19   by Local Rule, attorneys shall file all documents electronically as of **January 3, 2005** in all actions

20   pending before the court.

21           While Pro Se Litigants are exempt from this requirement, the court will scan in all

22   documents filed by pro se litigants, and the official court record in all cases will be electronic.

23   Attorneys are required to file electronically in pro se cases.  More information regarding the Court's

24   implementation of CM/ECF can be found on the court's web site at www.caed.uscourts.gov,

25   including the Court's Amended Local Rules effective January 3, 2005, the Court's CM/ECF Final

26   Procedures, and the Court's CM/ECF User's Manual.

27           While the Clerk's Office will not refuse to file a proffered paper document, the

28   Clerk's Office will scan it and, if improperly filed, notify the Court that the document was filed in an

improper format.  An order to show cause (OSC) may be issued in appropriate cases regarding an

attorney's disregard for the

requirement to utilize electronic filing, or other violations of these electronic filing procedures.  See

L.R. 11-110, L.R.

5-133(d)(3).

      If counsel has not already done so, counsel **must** register for CM/ECF as soon as possible.

On-line registration is available at www.caed.uscourts.gov.  Once registered, counsel will receive a

login and password in approximately one (1) week.  Counsel must be registered to file documents

on-line.  See L.R. 5-135(g).  Counsel are responsible for knowing the rules governing electronic

filing in the Eastern District.  Please review the Court's Local Rules effective January 3, 2005,

available on the Court's web site.

      16.    Effect of this Order:

      The foregoing Order represents the best estimate of the Court and counsel as to the agenda

most suitable to bring this case to resolution.  The trial date reserved is specifically reserved for this

case.  If the parties determine at any time that the schedule outlined in this Order cannot be met,

counsel are ordered to notify the Court *immediately* so that adjustments may be made, either by

stipulation or by subsequent status conference.

      Stipulations extending the deadlines contained herein will not be considered unless they are

accompanied by affidavits or declarations and, where appropriate, attached exhibits which establish

good cause for granting the relief requested.

      **FAILURE TO COMPLY WITH THIS ORDER SHALL RESULT IN THE**

**IMPOSITION OF SANCTIONS.**

IT IS SO ORDERED.

**Dated:**   **September 7, 2007**          **/s/  William M. Wunderlich**
                              UNITED STATES MAGISTRATE JUDGE